

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

July 27, 1949

Hon. George B. Butler, Chairman
Board of Insurance Commissioners
Land Office Building
Austin, Texas

Opinion No. V-863

Re: Authority of a stock fire
and casualty insurance com-
pany and a county mutual
insurance company to enter
into a mutual reinsurance
agreement, and related
questions.

Dear Mr. Butler:

By letter of April 18, 1949, you request an
opinion concerning the legality of a proposed reinsur-
ance agreement between Alamo Casualty Company, a capi-
tal stock company incorporated under the provisions of
Chapters 2, 11, and 18 of Title 78, Vernon's Civil
Statutes, and Bexar County Mutual Insurance Company,
a county mutual insurance company incorporated and
licensed under the provisions of Article 4860a-20,
as amended, Vernon's Civil Statutes.

Your letter raises these specific questions:

1. Is each company authorized to enter
into the agreement?

2. If so, what "character of risks" of
the stock company may the mutual company as-
sume to reinsure under the agreement?

3. Will the agreement, if authorized, re-
lieve the stock company of the reinsurance or
unearned premium reserve requirement imposed
by Sections 7, 8, and 9 of Article 4682, Ver-
non's Civil Statutes, as to the business so
reinsured?

4. If so, will the assumption by the
mutual company to reinsure the risks of the
stock company impose a statutory obligation
on the former to maintain such a reserve on
the business so reinsured by it?

     5. If authorized, will the assumption by the mutual company to reinsure risks of the stock company impose on the latter a statutory obligation to maintain a reserve in the amount of $1.00 per hundred of the total exposure reinsured by the mutual company as a contingent liability of the stock company as a policyholder of the mutual company by virtue of or in lieu of the assessment liability of policyholders of the mutual under the terms of article 4860a-20, Vernon's Civil Statutes?

The conditional nature of the various questions is apparent, and their pertinence is indicated by the terms of the agreement and the various applicable statutes.

     The agreement is essentially a predetermined plan designed to establish mutual obligations of the companies to each other as to individual risks or portions thereof selected by each as original or direct insurer and shifted or "ceded" to the other as reinsurer, as evidence by a list, called a "bordereau," prepared monthly and passed by the direct writing insurer to the other as reinsurer. Each company obligates itself to accept such risks as are imposed upon it by the other in consideration of the mutual obligations undertaken and in consideration of the relinquishment or "cession" of the premium charged by the direct writing company for that portion of each risk "ceded," minus a stipulated "commission." The contract is subject to cancellation upon stipulated notice by either party.

     All statutory references will be to Vernon's Civil Statutes unless otherwise indicated.

     We will initially consider your first question from the standpoint of the stock company. An exhibit from its last annual statement indicates that it writes the kinds of insurance classified as "fire and Marine" under Article 4919, as well as a number of casualty lines, including auto and other liability and workmen's compensation insurance. Article 4919, dealing with companies writing so-called fire and marine lines, expressly authorizes such a company "to cause itself to be so insured against any loss or risk it may have incurred in the course of its business. . . ." To the same effect is Article 4932, authorizing fire and marine companies to reinsure "in any other insurance company legally authorized to do business in this state." It is necessarily implied that such other companies are generally authorized to accept such risks as a reinsurer. As to the other kinds of insurance written by the stock company, there being no statutory expression on the subject, the rule is stated in 46 Corpus Juris Secundum, 197, Section 1221:

"As a general rule, under a general pow-
er to make contracts of insurance, an insur-
ance company is authorized to reinsure its
risks or the risks of other companies."

We therefore conclude that the stock company may enter
into a reciprocal reinsurance agreement with another com-
pany.

The subject of the county mutual accepting or
ceding reinsurance is expressly treated in Section 20
of Article 4860a-20, which provides:

"County Mutual Insurance Companies may
reinsure any or all of their risks against
any or all hazards which they are permitted
to insure against with any other company or
companies.

"They shall have power and authority to
make and enter into mutual or reciprocal re-
insurance contracts with other Companies on
the mutual or co-operative plan; provided
that no County Mutual shall write or assume
the reinsurance on any other property than
the property it is permitted to insure, or
on property situated outside of the State of
Texas, and when such a County Mutual rein-
sures the property of another Company, it
shall not by reason of such fact be, or be-
come a member or partner, of such other Com-
pany, but shall only become liable for the
losses of such other Company as specified in
the contract of interinsurance and not other-
wise; and provided further, that a County
Mutual shall only have authority to reinsure
the risks of another Company in consideration
of the fact that such other Company reinsures
its risks; and for the purpose it may pay or
collect additional assessments and/or premi-
ums as the case may be."

The first paragraph of Section 20 appears to
authorize the County Mutual to procure reinsurance of
its risks with other insurance companies without quali-
fication as to the type of such other insurance compa-
nies. The second paragraph, dealing with the accept-
ance of reinsurance obligations by county mutual compa-

nies from other insurance companies is less clear in
respect to the type of company whose risks the county
mutual may reinsure. That possible ambiguity raises the
main question submitted by you.

You have advised us that you interpret the
phrase "on the mutual or cooperative plan" to qualify
the word "Companies" immediately preceding, in such a
way as to make the first part of the second paragraph
read:

"They shall have power and authority to
make and enter into mutual or reciprocal re-
insurance contracts with other Companies
(operating) on the mutual or co-operative
plan; . . ."

You further construe the phrase "Companies on the mutual
or cooperative plan" to mean county mutuals, and in sup-
port of such construction you refer us to the definition
of "County Mutual Insurance Companies" in Section 1 of
Article 4860a-20 as,

"companies organized for the purpose of
insurance on the mutual or cooperative plan
against loss or damage by fire, lightening,
gas explosion, theft, windstorm and hail, and
for all or either of such purposes." (Emphasis
supplied.)

There is no fundamental reason why a mutual and a
stock company may not mutually reinsure each other. Each
is a corporate entity, entirely capable, in the eyes of
the law, of making contracts mutually beneficial to each.
The phrase, "on the mutual or cooperative plan," can also
be read to modify "to make and enter into mutual or re-
ciprocal reinsurance contracts." These phrases are not
necessarily redundant, since one may refer to the re-
insurance contract while the other may refer to the over-
all plan under which the contract is to be made. The de-
finition in Section 1 is of doubtful value since on its
face it describes mutual companies which are not neces-
sarily "County Mutuals." It does not attempt to set
out what are companies "on the mutual or cooperative
plan," but, conversely, merely states in effect that
to be a county mutual insurance company, the company must
operate "on the mutual or cooperative plan."

The remaining provisions of the second paragraph, upon careful analysis, do not exclude the possibility of reciprocal reinsurance with other than a county mutual. Except as limited by the individual company charter, all county mutuals are limited to the same character of risks on the same kind of property. Yet the statute carefully prohibits reinsurance of any property other than the property the county mutual is permitted to insure, inferring the possibility of reinsurance dealings with companies having no such limitations. The conspicuous absence of qualifying designations wherever the word "Company" is used tends to negative an intention to limit the reinsurance power to reciprocation with only "county mutual" or other "mutual" or "cooperative" companies, since such a limitation could have been easily expressed.

In this connection, we note that by Acts 1947, 50th Legislature, p. 739, chapter 367, Art. 4860a-20 was amended so that the word "Company" is defined to "refer to and _include_ all types of organizations, associations, companies or groups subject to the provisions of this Act." (Emphasis supplied). However, it is to be noted that the definition of the word "Company" does not _exclude_ other types of organizations but merely _includes_ those subject to the provisions of "this act." The context must necessarily be considered in determining the meaning of "Company" as used in various provisions of the law.

We, therefore, conclude that the reciprocal reinsurance contemplated by the statute is not limited expressly or by necessary implication to county mutuals or other mutual or cooperative plan companies, and in the absence of such limitation we conclude that the stock and the mutual company may each enter into the agreement. The agreement purports to contemplate reciprocation, cooperation, and mutuality in the exchange of reinsurance obligations sufficiently to meet the loose standards of the statute.

Your second question appears to be answered by the express terms of Section 20, heretofore quoted, which, taken together with Section 1a of Article 4860a-20, refers to the various statutes prescribing the hazards against which fire and windstorm insurance companies operating in Texas may insure and refers to Section 1 of Article 4860a-20 in determining the kinds of property which may be so insured. It would unduly lengthen

this opinion to quote or digest such statutes and we will assume that your board may satisfactorily determine the propriety of specific items by such reference as indicated.

Your third question at the time it was asked was governed by Sections 7, 8 and 9 of Article 4682, prescribing the duties of the Board of Insurance Commissioners, which provide:

"7. Shall calculate reserve on fire insurance.- For every company doing fire insurance business in this State, he shall calculate the reinsurance reserve for unexpired fire risks by taking fifty per cent of the premiums received on all unexpired risks that have less than one year to run, and a pro rata of all premiums received on risks that have more than one year to run. When the reinsurance reserve, calculated as above, is less than forty per cent of all the premiums received during the year, the reinsurance reserve in this case shall be the whole of the premiums received on all of its unexpired risks. For every company transacting any kind of insurance business in this State, for which no basis is prescribed by law, he shall calculate the reinsurance reserve upon the same basis prescribed in this article as to companies transacting fire insurance business.

"8. Shall charge premiums. - In Marine and inland insurance, he shall charge all the premiums received on unexpired risks as a reinsurance reserve.

"9. When company's capital is impaired.- Having charged against a company other than life, the reinsurance reserve, as prescribed by the laws of this State, and adding thereto all other debts and claims against the company, he shall, in case he finds the capital stock of the company impaired to the extent of twenty per cent give notice to the company to make good its whole capital stock within sixty days, and, if this is not done, he shall require the company to cease to do business within this State, and shall thereupon,

in the case the company is organized under au-
thority of the State, immediately institute
legal proceedings to determine what further
shall be done in the case."

The above statutes make the maintenance of the required re-
serves a condition of solvency. In our opinion the re-
serves must be maintained by the reinsurer or the reinsur-
ed or in the aggregate between them.

Your third question was asked, however, prior to
the enactment of Senate Bill 192, 51st Legislature, Sec-
tion 16 of which reads, in part, as follows:

"County Mutual Insurance Companies shall
maintain at all times unearned premium reserves
for all unexpired risks by reserving 50% of
the unearned portion of premiums collected af-
ter the effective date of this Act on business
in force or written thereafter having two years
or less to run, and by reserving a pro rata of
all premiums collected on risks that have more
than two years to run. . . ."

We assume that the absence of reserve requirements
under the old law on county mutual companies prompted your
third question, but the above enactment has now placed cer-
tain reserve requirements upon such companies. We have
been referred by the proponents of this agreement to the
practice of your Board in allowing a reserve reduction where
reinsurance is ceded, but you advise that such practice has
been applied only to the extent that the reinsuring company
is subject to statutory reserve requirements and thus the
full statutory reserve is in fact, maintained by the com-
panies which are parties to the reinsurance transaction,
either by one or the other or in the aggregate between them.
It now seems that your cited practice of allowing a reserve
reduction on account of reinsurance is applicable to the
extent that reserves are required of these companies by law.
Your practice will now apply to those companies to that ex-
tent to which they are required by statute to maintain re-
serves, bearing in mind that the full required reserve as
to each company must be maintained by one or the other or
in the aggregate between them under your practice.

Our conclusion regarding the third question dispos-
es of the fourth, since the latter question is predicated
on a negative answer to the third.

The solution of the fifth and final question depends upon whether Article 4860a-20 contemplates contingent liability on the part of the reinsured stock company and on whether such reinsured company becomes a member or policyholder of the mutual by virtue of the statute. The statute contemplates only owners of insurable property as members of the mutual. Only "policyholders" are expressly subject to a contingent liability in Sections 6 and 2a(r). The lien securing such liability attaches only to real and personal property insured, Reinsureds have been held not to be "policyholders" within the meaning of other regulatory statutes. Cunningham v. Republic Ins. Co., 127 Tex. 499, 94 S.W.2d 140 (1936, per Hickman, J.). Section 20 contemplates a reciprocal contract by virtue of which the county mutual shall not be a member or partner of the reciprocating company. It appears to contemplate that each company shall bear the charges against it, looking to its own resources and membership for funds to meet them. We, therefore, conclude that the stock company in its capacity as a reinsured is not required by statute to maintain a reserve to meet contingent liabilities imposed by the statute on policyholders as members. It may, of course, voluntarily contract to do so.

## SUMMARY

A stock fire and casualty insurance company and a county mutual insurance company are not prohibited by statute from entering into a mutual reinsurance agreement. Arts. 4919, 4932, 4860a-20, V.C.S.; 46 C.J.S. 197.

A county mutual insurance company may reinsure such risks of a stock fire and casualty insurance company as the county mutual insurance company is authorized by statute to insure as a direct insurer. Art. 4860a-20, V.C.S.

Under the established practice of the Board of Insurance Commissioners, the unearned premium reserves required by statute must be maintained by the reinsuring company

or by the reinsured company or in the aggregate between them.

A stock fire and casualty insurance company is not required by statute to maintain a reserve equal to a "policyholders" contingent assessment liability as a member of a county mutual insurance company by reason of being reinsured by the county mutual insurance company under a reciprocal reinsurance agreement. Art. 4860a-20, V.C.S.; Cunningham v. Republic Ins. Co., 127 Tex. 499, 94 S.W.2d 140.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Ned McDaniel
Assistant

David B. Irons
Administrative Assistant

APPROVED

Price Daniel
ATTORNEY GENERAL

NM:bh:gw